IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SALSGIVER COMMUNICATIONS, INC.,
SALSGIVER TELECOM, INC. SALSGIVER,
INC.,                                                                    08cv0663
                                                                         **ELECTRONICALLY FILED**
             Plaintiffs,

       v.

CONSOLIDATED COMMUNICATIONS
HOLDINGS, INC., NORTH PITTSBURGH
SYSTEMS, INC., NORTH PITTSBURGH
TELEPHONE COMPANY, INC.

             Defendants.

## MEMORANDUM OPINION

### I.      Introduction and Background.

       Before the Court are defendants' motion to dismiss a complaint which they removed from

the Court of Common Pleas of Allegheny County to this Court on May 16, 2008, and plaintiffs'

motion to remand to that Court for lack of federal jurisdiction.  After careful consideration of the

complaint, the notice of removal, the pending motions, and the briefs in support and in

opposition thereto, the Court will grant plaintiffs' motion to remand to state court, and will deny

defendants' motion to dismiss without prejudice to raise the issues set forth therein in the Court

of Common Pleas of Allegheny County, including any federal preemption defense they may

have.

### A.      State Court Complaint.

       Plaintiffs Salsgiver Communications, Inc., Salsgiver Telecom, Inc., and Salsgiver, Inc.

filed their Complaint in Civil Action in state court setting forth three causes of action, each

sounding in Pennsylvania common law tort, namely, negligent and intentional interference with

prospective and existing contractual relations with third parties. Count I alleges that Salsgiver

Communications, Inc. is and was at all relevant times a "cable television system" within the

meaning of the Pole Attachment Act (the Act"), 47 U.S.C. § 224 (a provision of the Federal

Communications Act of 1934, as amended); that defendants Consolidated Communications

Holdings, Inc., North Pittsburgh Systems, Inc., and North Pittsburgh Telephone Company, Inc.

were required by the Act to allow cable television systems, including Salsgiver Communications

access to defendants' poles, as the Federal Communications Commission held and ordered

following its adjudication of Salsgiver Communications' administrative complaint; that

defendants knew or should have known since October 2004 that Salsgiver Communications was

entitled to use defendants' poles; and that defendants' refusal to allow access to said poles

willfully, intentionally, purposefully and negligently interfered with Salsgiver Communications'

prospective and existing contractual relations with third parties, causing over one hundred

million dollars in lost profits and other damages when Salsgiver Communications was unable to

fulfill its obligations to third parties. Complaint, ¶¶ 1-23. Count II alleges that Salsgiver

Telecom, Inc. is and was a "telecommunications carrier" within the meaning of the Act at all

relevant times and, as such, was also entitled to access to defendants' poles, as the FCC held and

ordered following its adjudication of Salsgiver Telecom's administrative complaint; that

defendants knew or should have known since October 2005 that Salsgiver Telecom was entitled

to use defendants' poles; and that defendants' refusal to allow access to said poles willfully,

intentionally, purposefully and negligently interfered with Salsgiver Telecom's contractual

relations with third parties, causing the loss of over $1.6 million in lost profit and other damages

when Salsgiver Telecom was unable to fulfill its obligations to third parties. Complaint, ¶¶ 24-

30.  Count III alleges that defendants willfully, intentionally, purposefully and negligently interfered with Salsgiver Inc.'s contractual relations with its wholly-owned subsidiaries, the other Salsgiver entities, causing over $3.2 million in unnecessary costs and expenditures and other damages.  Complaint, ¶¶ 31-35.

   B.    **Notice of Removal.**

   Defendants' Notice of Removal claims federal question jurisdiction, 28 U.S.C. § 1331, as the basis for removal under 28 U.S.C. § 1441, stating "two independent bases" for federal question jurisdiction.  First, defendants assert that the complaint raises a "substantial federal question," and therefore arises under federal law, because a necessary element of plaintiffs' cause of action for intentional interference with existing and prospective contractual relations is that defendants had no privilege or justification for their alleged acts of interference, that whatever duties defendants have to provide access to plaintiffs to use its poles is established by the Act, and that the alleged violation of the Act and lack of privilege or justification "are central and essential elements of Plaintiffs' purported causes of action."  Notice of Removal (doc. no.  1) at ¶¶  10-13.  Second, defendants claim that the Act completely preempts any state regulations or laws implicating pole attachments under the Act.  *Id*. at ¶¶ 14-17.

   C.    **Motion to Remand.**

   Plaintiffs contend that this Court lacks subject matter jurisdiction because their claims of interference with prospective and existing contractual relations under Pennsylvania common law do not present a substantial federal question.  Whatever federal question may have existed has

been finally adjudicated by the decisions of the FCC[1] holding that Salsgiver Communications, Inc. qualifies as a "cable television system" and that Salsgiver Telecom, Inc. is a "telecommunications carrier" within the meaning of the Act, and therefore, both are and were entitled to non-discriminatory access to defendants' utility poles.

Defendants respond that a substantial federal dispute remains an essential element of plaintiffs' claims, that the Act completely preempts state regulatory authority over pole attachments, and that plaintiffs' claims must be recharacterized as federal claims under the Federal Communications Act of which the Pole Attachment Act is a part.

## II. Removal Jurisdiction.

## A. In General.

Removal is governed by statute, 28 U.S.C. § 1441, which provides: "(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Federal district courts have "federal question" jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and diversity jurisdiction over citizens of different states, 28 U.S.C. § 1332. Where, as here, "the parties are not diverse, removal is appropriate only if the case falls within the district court's original 'federal question' jurisdiction." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002).

---

[1] The FCC Adjudications of May 23, 2007 and November 26, 2007, are attached to defendants' Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P 12(b)(6) as Exhibits B and C, respectively (doc. no. 4-4 and 4-5).

Whether filed initially in federal court or on removal from a state court, a federal court must always consider its own jurisdiction to proceed in a matter, and should do so *sua sponte* if not raised by the parties. *Id*. at 388-89 (recognizing the "duty of federal courts to examine their subject matter jurisdiction at all stages of the litigation *sua sponte* if the parties fail to raise the issue."). As federal courts are courts of only limited jurisdiction, there is a general presumption against federal jurisdiction which the party seeking to invoke federal jurisdiction bears the burden of rebutting. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, "statutes purporting to confer federal jurisdiction are to be construed narrowly, with ambiguities resolved against a finding of federal jurisdiction," given the "well-established principles reflecting a reluctance to find federal jurisdiction unless it is clearly provided . . ." by Congress. *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 518 (3d Cir. 1998) (citations omitted) (Telephone Consumer Protection Act did not provide for private suits in federal court; "appellants' argument that federal question jurisdiction is proper because the complaint poses a substantial federal question seems misplaced [here because] federal law is the source of appellants' cause of action, but refers litigants to state courts only. Thus, regardless of the presence of a substantial federal question, Congress' intent to preclude consumer suits under TCPA in federal court trumps the general grant of federal question jurisdiction in § 1331.").

So too, because federal courts have limited jurisdiction as defined by Congress, the removal statutes are strictly construed against removal. *E.g., American Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1974). The United States Court of Appeals for the Third Circuit has repeatedly emphasized that because the party "who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists . . . ,

all doubts should be resolved in favor of remand." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (internal quotations and citations omitted). See also *Morgan v. Gay*, 471 F.3d 469, 472 (3d Cir. 2006) ("The party seeking to remove a case to federal court bears the burden to establish jurisdiction."), citing *Boyer* and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ( "The party invoking federal jurisdiction bears the burden of establishing these elements." ); *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996) ("all doubts" means that if "there is any doubt as to the propriety of removal, [the] case should not be removed to federal court" and should be remanded).

### B. Federal Question Removal.

 Whether or not the Court has federal question jurisdiction over a matter that the defendant has removed from state court is governed by the "well-pleaded complaint rule," under which the federal question "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Id*. (citation omitted). *Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271, 276 (3d Cir. 2007) ("Federal question jurisdiction exists when the plaintiff's well-pleaded complaint establishes that 'federal law creates the cause of action.'"). The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Kline v. Security Guards, Inc.*, 386 F.3d 246, 252 (3d Cir. 2004), citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, 113 (3d Cir. 1990) .

The Court of Appeals summarized the well-pleaded complaint rule in *In re Community Bank of Northern Virginia*, 418 F.3d 277, 293-94 (3d Cir. 2005) as follows:

It is well settled that "[o]nly state-court actions that originally could have been

filed in federal court may be removed to federal court by the defendant."
*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded
complaint rule, there can be no removal on the basis of a federal question unless
the federal law under which the claim arises is a direct and essential element of
the plaintiff's case. See *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation
Trust for S. Cal.*, 463 U.S. 1, 10-12 (1983); *Louisville & Nashville R.R. Co. v.
Mottley*, 211 U.S. 149 (1908).

(parallel citations omitted).

## C. "Arising Under" Jurisdiction.

Generally, a case "aris[es] under federal law" for section 1331 purposes if "a
well-pleaded complaint establishes either that federal law creates the cause of action or that the
plaintiff's right to relief necessarily depends on resolution of a substantial question of federal
law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (citing
*Franchise Tax Bd.*, 463 U.S. at 27-28. "Arising under" jurisdiction may not always be easy to
discern, as the Court of Appeals explained in the *ErieNet* case:

The term "arising under" eludes precise definition. Justice Holmes articulated the
most common definition: "[a] suit arises under the law that creates the cause of
action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260
(1916). More recently, this court has recognized two tests that generally apply to
a court's assessment of federal question jurisdiction. See *Virgin Islands Housing
Auth. v. Coastal General Constr. Serv. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994).
"First, the question is whether federal law creates the cause of action. If not, the
second inquiry is whether the complaint poses a substantial federal question." *Id.*
(citing *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d
188, 192 (2d Cir. 1987)). See also *Franchise Tax Board v. Construction Laborers
Vacation Trust*, 463 U.S. 1, 27-28 (1983).

156 F.3d at 518 (parallel citations omitted).

"Arising under" federal question jurisdiction became less elusive, however, in *Grable &
Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), which
substantially clarified and confined its meaning. In the *Grable & Sons* case, the United States

Supreme Court recognized that the "arising under the Constitution, laws, or treaties of the United States" provision for federal-question jurisdiction is most often invoked by plaintiffs pleading a cause of action expressly created by federal law, such as claims under 42 U.S.C. §1983, but narrowed the reach of the "substantial federal question" type of "arising under" jurisdiction as follows:

> There is . . . another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. E.g., *Hopkins v. Walker*, 244 U.S. 486, 490-491(1917). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues, see ALI, Study of the Division of Jurisdiction Between State and Federal Courts 164-166 (1968).

545 U.S. at 312 (parallel citations omitted).

But, the Court further explained, "arising under" jurisdiction does not take an "expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door . . . ," and noted that early-on, the Court had "confined federal-question jurisdiction over state-law claims to those that 'really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law. . . .'" *Id*. at 313 (citations omitted). See also *Empire Healthchoice*, 547 U.S. at 700-01 (not every case that implicates a federal law or statute, such as the Federal Employees Health Benefits Act, is a "federal case"; "In sum, *Grable* emphasized that it takes more than a federal element 'to open the 'arising under' door.'"); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986) ("the mere presence of a federal issue in a state cause of action does not automatically confer federal-question

jurisdiction.").  The Court stated that there is no "'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties," and, in an oft-quoted phrase of limitation, stated:

> We have not kept [federal issues embedded in state-law claims] out simply because they appeared in state raiment, as Justice Holmes would have done . . . , but neither have we treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. Instead, *the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial*, which a federal forum may entertain without disturbing any *congressionally approved balance of federal and state judicial responsibilities*.

*Grable & Sons* 545 U.S. at 314 (citation omitted; emphasis added).

### D.      "Artful Pleading" Exception - Complete Preemption.

As the United States Court of Appeals for the Third Circuit stated in the *Kline* case, there is an "exception to the well-pleaded complaint rule that precludes a plaintiff from 'avoid[ing] a federal forum by 'artfully pleading' what is, in essence, a federal claim solely in terms of state law.'"  386 F.3d at 252, citing *Caterpillar*, 482 U.S. at 393 (additional citations omitted).  See also *United Jersey Banks v. Parell*, 783 F.2d 360, 367 (3d Cir.1986), cert. denied, 476 U.S. 1170 (1986) (a plaintiff cannot avoid federal jurisdiction by "artfully pleading" his federal claim as a state law claim).  In *Franchise Tax Bd.*, 463 U.S. at 13, the Supreme Court identified two situations where federal jurisdiction could be available even though plaintiff's claim in state court is based on state law: (1) when "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims" or (2) when it appears that plaintiff's claim "is 'really' one of federal law."

The first situation seems less an exception to the well-pleaded complaint rule than an application of the principles of determining if "arising under" federal question jurisdiction exists.

The second situation where a state claim may be deemed to be "really" one of federal law, is dependent upon whether Congress has completely preempted state laws and regulations, and has been equated with the "complete preemption" doctrine. Complete preemption is "a distinct concept from ordinary preemption" and "the fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . . does not establish that they are removable to federal court." *Goepel v. National Postal Mail Handlers Union, a Div. of LIUNA*, 36 F.3d 306, 310 (3d Cir. 1994), quoting *Railway Labor Excecutives Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988).

Complete preemption was explained in *Community Bank of Northern Virginia*, 418 F.3d at 294, as follows:

> [T]he complete preemption doctrine is an "independent corollary" to the well-pleaded complaint rule. *Caterpillar Inc.*, 482 U.S. at 393. In *Caterpillar*, the Supreme Court stated:
>
>> On occasion, the Court has concluded that the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. . . . Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.
>
> *Id.* (internal quotations and citations omitted); see also *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 161 (3d Cir. 1999); *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996) (stating that complete preemption is "not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal").

418 F.3d at 293-94 (parallel citations omitted; emphasis added).

*Goepel* emphasized the narrowness of the complete preemption exception to the well-pleaded complaint rule. *Goepel* held that the Federal Employees Health Benefits Act (FEHBA) did not completely preempt plaintiff's state law claims (for discrimination, breach of contract, unconscionable exclusion of coverage, and unfair claim settlement practices, based on denial of coverage for breast cancer treatment) so as to permit removal of action, *even though* FEHBA contained a preemption clause *and even though* resolution of the state law claims would inevitably require substantial interpretation of that federal law.[2] (*Goepel* presaged the holding of the United States Supreme Court in *Empire Healthchoice*.)

Thus, the scope of the complete preemption exception (or "independent corollary") to the well-pleaded complaint rule has been significantly restricted; it applies only if "the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls" and there has been "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Goepel*, 36 F.3d at 311-13, citing *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988) (the only state claims that are "really" federal claims and thus removable to federal court pursuant to *Franchise Tax Bd.* are those that are preempted

_____

[2] The Court of Appeals in the *Goepel* case held, at 36 F.3d at 311-13, as follows:

Based on the language of FEHBA and the regulations promulgated pursuant to it, it is clear that FEHBA does not create a statutory cause of action vindicating the same interest that the Goepels' state causes of action seek to vindicate, namely the recovery of benefits from the Plan. Consequently, we conclude that the complete preemption doctrine does not apply to the Goepels' claims, and thus "recharacterization" of their state claims as federal claims is "not possible" and "there is no claim arising under federal law to be removed and litigated in the federal court."

completely by federal law) and *Metropolitan Life*, 481 U.S. at 64-66, *inter alia.*

The Supreme Court has recognized only four areas wherein Congress has completely preempted state claims implicating those areas: the Labor Management Relations Act, the Employee Retirement Income Security Act, some areas involving the affairs of American Indians, and the National Bank Act. See *Caterpillar*, 482 U.S. at 393-99 (LMRA); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (ERISA); *Oneida Indian Nation v. Oneida County, N.Y.*, 414 U.S. 661, 675 (1974) (Indian Affairs); *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003) (National Bank Act).

### E. "Ordinary" Preemption as a Defense.

The *jurisdictional doctrine* of complete preemption should not be, but often is, confused with "ordinary preemption," which may present a *defense* to an action based on federal law, but is not itself a basis for removal jurisdiction, as the *Joyce* case explained:

> Complete preemption occurs when federal law so completely preempts an entire area of law that the state cause of action is entirely displaced by federal law. If this doctrine applies, the district court has removal jurisdiction, even if the well-pleaded complaint rule is not satisfied. . . . However, if a state claim does not come within this doctrine, the well-pleaded complaint rule still applies, and the district court does not have removal jurisdiction unless a federal cause of action is pled. Even if the complete preemption does not apply, the defendant may nonetheless claim federal preemption as defense [in state court].

*Joyce*, 126 F.3d at 171 (citation omitted). See also *Goepel*, 36 F.3d at 310; *Railway Labor Executives*, 858 F.2d at 942.

As succinctly explained by a colleague in the Eastern District:

> Complete preemption is a jurisdictional doctrine that transforms state claims into federal claims, even if they have been pleaded purely under state law. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). Complete preemption is not to be confused with "ordinary" preemption. In tort suits, ordinary preemption operates

> as a defense to override state laws in conflict with federal laws, but it cannot create federal jurisdiction on its own. Long established black-letter law dictates that a "well pleaded complaint" resting on purely state law grounds never give rises to federal jurisdiction, even if a federal defense, such as ordinary preemption, plainly exists. See, e.g., *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908). The well-pleaded state law complaint can only be pulled into federal court if it is completely preempted - that is, "when a federal statute wholly displaces the state-law cause of action." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).

*Greenawalt v. Philip Rosenau Co., Inc.*, 471 F.Supp.2d 531, 532 (E.D.Pa. 2007) (Brody, J.; parallel citations omitted). See also *Russell v. Sprint Corp.*, 264 F.Supp.2d 955 (D.Kan. 2003) (although Federal Communications Act might supply an ordinary preemption defense to plaintiffs' state consumer protection law claims to the extent such claims implicated the authority of the FCC to regulate market entry and rates, there is no indication that Congress intended to completely preempt state law and permit removal of said claims to federal court).

Where federal preemption is raised as a defense to state claims under the Supremacy Clause of the United States Constitution, courts will frequently determine whether Congress intended federal laws to preempt such state *claims* -- as opposed to preempt state court *jurisdiction* altogether -- by consideration of "express," "field" and "conflict" preemption. *Colacicco v. Apotex Inc.*, 521 F.3d 253 (3d Cir. 2008) (wrongful death claims by survivors of suicide victims who had taken antidepressants known as selective serotonin reuptake inhibitors were impliedly preempted because of conflict with Food and Drug Administration's regulatory actions). See e.g., *Riegel v. Medtronic, Inc.*, ___ U.S. ___, 128 S.Ct. 999 (2008) (state safety requirements are preempted under the Medical Devices Act only to the extent that they are "different from, or in addition to" the requirements imposed by federal law; patient's New York common-law claims of negligence, strict liability, and implied warranty against manufacturer

were impliedly preempted by Food and Drug Administration's premarket approval process establishing federal safety requirements).

"Express" preemption is applicable when Congress expressly states its intent to preempt state law; "field" preemption is applicable when "Congress' intent to preempt all state law in a particular area may be inferred" because the scheme of federal regulation is "sufficiently comprehensive" or the federal interest is "so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject"; and "conflict" preemption applies when "state law is nullified to the extent that it actually conflicts with federal law," even though Congress has not displaced all state law in a given area. *Colacicco*, 521 F.3d at 261, quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985). See also *Lindsey v. Caterpillar, Inc.*, 480 F.3d 202 (3d Cir. 2008) ("Preemption may arise in one of three ways. First, courts will find express preemption if Congress has defined explicitly the extent to which a statute preempts state law. Second, in the absence of explicit statutory language, state law is subject to field preemption if it regulates conduct in a field that Congress intended the federal government to occupy exclusively. Finally, state law is preempted to the extent it actually conflicts with federal law." New Jersey wrongful death claim was not preempted by regulation promulgated under Occupational Safety and Health Act setting forth requirements for rollover protective structures for material-handling equipment). The touchstone of a preemption defense is always "congressional purpose, which includes a relevant understanding of the structure and purpose of the statute as a whole." *Id.* at 206.

### III.    Application.

### A.    The State Cause of Action.

Applying the foregoing principles to this case, the Court finds no basis for federal question removal jurisdiction.  There is no question that plaintiff's well-pleaded complaint  raises only Pennsylvania common law claims – three counts of tortious interference with prospective and existing contractual rights.  Under Pennsylvania law, the elements of a cause of action for intentional interference with a contractual relation, whether existing or prospective, are: (1) the existence of a contractual, or prospective contractual, relation between the complainant and a third party; (2) some purposeful action on the part of the defendant that is specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of any privilege or justification for defendant's allegedly interfering actions; and (4) actual legal damages as a result of defendant's conduct.  *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000), citing *Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa.Super. 1997) (citations omitted).

For this Court to exercise jurisdiction over such claims, defendants must meet their burden of proving that plaintiffs' common law claims either "arise under" the Act, because they present a substantial federal question which is a direct and essential element of their cause of action, or that the state common law claims are completely preempted by the Act so that it may be said that plaintiffs' claims are "really" federal claims.  Defendants cannot carry their burden under either theory.

### B.    The Pole Attachment Act.

In 1978, Congress amended the Communications Act of 1934 to provide for the

regulation of utility pole attachments with the addition of the Pole Attachments Act. 47 U.S.C.

§ 224; Pub.L. 95-234, February 21, 1978, 92 Stat. 35, Section 6. The Telecommunications Act

of 1996, Pub.L. 104-104, February 8, 1996, 110 Stat 56, Section 703, substantially amended the

Pole Attachments Act to, *inter alia*, provide "telecommunications carriers" the same non-

discriminatory access to utility pole attachments as cable television services then enjoyed.[3] The

_____

[3] The Pole Attachments Act, 47 U.S.C. § 224, as amended, provides in most relevant part:

     a) Definitions
As used in this section:
\*   \*   \*
(4) The term "pole attachment" means any attachment by a cable television system or provider of telecommunications service to a pole, duct, conduit, or right-of-way owned or controlled by a utility.
\*   \*   \*

     (b) Authority of Commission to regulate rates, terms, and conditions; enforcement powers; promulgation of regulations
(1) Subject to the provisions of subsection (c) of this section, the Commission shall regulate the rates, terms, and conditions for pole attachments to provide that such rates, terms, and conditions are just and reasonable, and shall adopt procedures necessary and appropriate to hear and resolve complaints concerning such rates, terms, and conditions. . . .
(2) The Commission shall prescribe by rule regulations to carry out the provisions of this section.

     (c) State regulatory authority over rates, terms, and conditions; preemption; certification; circumstances constituting State regulation
(1) Nothing in this section shall be construed to apply to, or to give the Commission jurisdiction with respect to rates, terms, and conditions, or access to poles, ducts, conduits, and rights-of-way as provided in subsection (f) of this section, for pole attachments in any case where such matters are regulated by a State.

(2) Each State which regulates the rates, terms, and conditions for pole attachments shall certify to the Commission that--
(A) it regulates such rates, terms, and conditions; and
(B) in so regulating such rates, terms, and conditions, the State has the authority to consider and does consider the interests of the subscribers of the services offered via such attachments, as well as the interests of the consumers of the utility services.

Pole Attachment Act defines the authority of the FCC to promulgate, regulate and enforce "rates, terms, and conditions" and to "provide that such rates, terms, and conditions are just and reasonable," except to the extent a state has adopted its own procedures and has been certified as meeting the requirement of the Act that would permit the state's regulations to supercede the FCC's with regard to "rates, terms and conditions." 47 U.S.C. § 244(b) and (c). Most important in the instant case, the Act provides for nondiscriminatory access by requiring utilities to

---

\*   \*   \*

(d) Determination of just and reasonable rates; "usable space" defined

(1) For purposes of subsection (b) of this section, a rate is just and reasonable if it assures a utility the recovery of not less than the additional costs of providing pole attachments, nor more than an amount determined by multiplying the percentage of the total usable space, or the percentage of the total duct or conduit capacity, which is occupied by the pole attachment by the sum of the operating expenses and actual capital costs of the utility attributable to the entire pole, duct, conduit, or right-of-way.
\*   \*   \*

(e) Regulations governing charges; apportionment of costs of providing space
(1) The Commission shall, no later than 2 years after February 8, 1996, prescribe regulations in accordance with this subsection to govern the charges for pole attachments used by telecommunications carriers to provide telecommunications services, when the parties fail to resolve a dispute over such charges. Such regulations shall ensure that a utility charges just, reasonable, and nondiscriminatory rates for pole attachments.
\*   \*   \*

(f) Nondiscriminatory access

(1) A utility shall provide a cable television system or any telecommunications carrier with nondiscriminatory access to any pole, duct, conduit, or right-of-way owned or controlled by it.
(2) Notwithstanding paragraph (1), a utility providing electric service may deny a cable television system or any telecommunications carrier access to its poles, ducts, conduits, or rights-of-way, on a non-discriminatory basis where there is insufficient capacity and for reasons of safety, reliability and generally applicable engineering purposes.
\*   \*   \*

"provide a cable television system or any telecommunications carrier with nondiscriminatory access to any pole, duct, conduit, or right-of-way owned or controlled by it" unless "there is insufficient capacity and for reasons of safety, reliability and generally applicable engineering purposes."  47 U.S.C. § 224(f).

The Act does not specifically provide a remedy for violation of its provisions, although the broader Federal Communications Act generally provides for private causes of action for damages.  47 U.S.C. §§ 205-209.  The Act does not specifically preempt any state regulations except with regard to "rates, terms and conditions" for pole attachments to the extent the State has not exercised its express authority under the Act to enact its own regulations regarding pole attachments.  Nothing in the Act, the Federal Communications Act or the Telecommunications Act of 1996 offer a clear indication of Congressional intent to permit removal of state law claims implicating those acts or requiring interpretation of their provisions in some way, although these acts no doubt contain language presenting ordinary federal preemption defenses to some state law claims.  In fact, section 414 is a Savings Clause which provides: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."  47 U.S.C. § 414.

### C.    Precedent Under Federal Communications Acts.

Thus, it is not surprising to find that *overwhelming* (though not universal) federal removal jurisdiction precedent addressing the complete preemption and substantial federal question issues in the context of federal communications laws have concluded that state law claims that implicate the provisions of such federal laws are not preempted and may not be removed to federal court when the plaintiff has initiated the proceedings in state court.  See e.g.,  *Nordlicht v.*

*New York Telephone Co.*, 799 F.2d 859 (2d Cir. 1986), cert. denied 479 U.S. 1055 (1986) (fact

that Communications Act of 1934 governed certain aspects of telephone carrier's billing

relationships with its customers did not mean that customer's traditional common-law claims,

concerning lawfulness of charges of carrier for telephone calls which originated outside the

United States, arose under the Act and, thus, did not provide basis for removal of those claims

from state court to federal court, where customer alleged violation of standards and did not allege

violation of any specific provision of the Act); *Thibodeau v. Comcast Corp.*, 2004 WL 2367828

(E.D. Pa. 2004) (because state common law claims of, *inter alia*, breach of contract, fraud and

misrepresentation do not present substantial federal question and are not preempted by Cable

Television and Consumer Protection Act of 1992, motion to remand removed state court action

granted); *In re Wireless Telephone Federal Cost Recovery Fees Litig.*, 343 F.Supp.2d 838, 854

(W.D. Mo. 2004) (collecting cases) (district court "does not find that defendants have met their

burden to demonstrate that these claims [brought by customers of telephone services providers

claiming providers misrepresented nature of charges they were passing through as result of

federally mandated activities] could have originally been filed in federal court, because the

claims are not completely preempted [by the Federal Communications Act] and the allegations

are not artfully pled and do not raise any substantial federal questions."); *Russell v. Sprint Corp.*,

264 F.Supp. 2d 955 (D.Kan. 2003) (collecting cases) (provision of Federal Communications Act

barring state and local regulation as to market entry of, or rates charged by, commercial mobile

service did not completely preempt consumers' state law claims, nor did substantial federal

question doctrine support removal); *Moriconi v. AT & T Wireless PCS, LLC*, 280 F.Supp.2d 867

(E.D. Ark. 2003) (same); *Bell Atlantic Mobile, Inc. v. Zoning Bd. of Butler Tp.*, 138 F.Supp.2d

668 (W.D. Pa. 2001) (Federal Telecommunications Act of 1996 did not preempt suit in state court, brought by owner of home located near proposed tower to be used for wireless telephone transmission, appealing town zoning board's lifting of restrictions placed on proposed tower, precluding federal question as basis for removal of action); *Aronson v. Sprint Spectrum, L.P.*, 90 F.Supp.2d 662 (W.D.Pa. 2000) (collecting cases) (Customers state court claims against telecommunications company alleging company's account system, which allowed third parties to access personal and confidential information about customers, constituted invasion of privacy, not preempted by Federal Telecommunications Act of 1996, nor did said claims provide substantial federal question supporting removal jurisdiction); *Bauchelle v. AT & T Corp.*, 989 F.Supp. 636 (D.N.J. 1997) (collecting cases) (plaintiff's New Jersey Consumer Fraud Act and common law fraud and negligent misrepresentation claims did not require construction of substantial disputed issue of federal law so as to provide court with federal subject matter jurisdiction over action and FCA did not completely preempt such claims so as provide court with federal jurisdiction allowing removal of action). Cf. *In re Comcast Cellular Telecomm. Litig.*, 949 F.Supp. 1193 (E.D. Pa. 1996) (Pennsylvania Unfair Trade Practices and Consumer Protection Law and breach of contract claims did not challenge reasonableness or legality of company's billing practices, and federal cause of action under Communications Act would not be available to pursue those claims, but claims for breach of implied duty of good faith and fair dealing, and unjust enrichment, directly challenged calculation of length of call and of rates charged for such call, and any state regulation of those practices was preempted under Act; under artful pleading doctrine, court would recharacterize claims for breach of implied duty of good faith and fair dealing and unjust enrichment as federal claims arising under Act and federal

common law surrounding Act and, thus, court had subject matter jurisdiction and complaint was properly removed from state court).

### IV.    Conclusion.

This Court is persuaded by the weight of authority in the context of the federal communications acts, which is consistent with the general principles of preemption and "arising under" federal question jurisdiction set forth in Section II. While a state claim or cause of action that necessarily involved a substantial federal question, such as one which directly impacts rates, terms and conditions, might serve as the basis for an ordinary federal preemption defense, it does not provide federal question, removal jurisdiction. Plaintiffs' common law tort of intentional interference with existing or prospective contractual relations does not present a substantial federal question, nor does the Pole Attachment Act completely preempt any such state law claims.

Accordingly, the Court will grant plaintiffs' motion to remand the case to the Court of Common Pleas of Allegheny County. A separate Order will be entered.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties